Mr. Neal, if you're ready to proceed. Your microphone's off right now. Okay, good. Thank you, Judge. I am going to switch to a different setting here just to be able to present my argument. Well, it's hard to hear you with your present setting. Judge, does this sound better? Yes, that's better. I apologize just for the court's benefit. We had just a major crash at 8.37 and I think at 8.57 we were able to get back LinkedIn. I'm still a bit analog though. Most of the documents that I could refer to were electronically and they're not available. But we'll get through the argument and then I apologize to the court if I won't be able to put my finger on parts of the documents very quickly and I apologize for that. Okay, we can start the time now. If it please the court, I think the issue that we bring before the court today is we have a bit of a categorical approach based on this is a claim from El Salvador that involves gangs. And so this is a subject that's come to the courts a lot. It's been ruled on a lot. And so I think as an issue before this court, the problem is that a categorical approach has missed certain specifics about this case that are different than the majority of the case law. And some of those errors involve the immigration judge finding, for example, that there was no past persecution because the murder of his father and the serious injury of his mother was, quote, not directly targeted towards the son. One of the particular social groups that we were proffering was that as the family member and that the characteristic that is immutable being part of that family is that the gangs have targeted this particular family. And where the arguments, or I shouldn't say the arguments, the findings of the immigration judge kind of pointed to this idea that there was, when they killed his father and shot his mother nine times, that there was no evidence that that was targeted specifically to Mr. Balenas. The issue that was, I think, missed was that there was a credible testimony that not only did the father and the mother get injured, the mother was injured, the father was killed, the father's brother and uncle and a cousin as well were killed by the same gang. It's also- Go ahead, Judge Morris. I was going to say, I'm still not hearing you say, I understand the tragic circumstances, but I'm not hearing you say that he was individually targeted. At the time of this, he was 10 years old, correct? Yes, Judge. And there's just no evidence that I can see that he would have somehow been the target of that attack. Right. And I think that's what the immigration judge did, is they focused on the facts just around that one particular incident when the murder occurred. But this is an ongoing and he attempted to relocate within the same country and in fact was living with the mayor of another town and that was an uncle of his. And after a year, it was clear that he was being targeted. He was being surveilled by this group and that he was a threat individually, him specifically, and that even the mayor of this town, who should have control of the police and other resources to protect this child, sent him away believing that the threat to him was so severe that it threatened his family as well. And so at that point, he had to return. He stayed with his mother until, again, personally, him individually, the threats to him from the gang, including an exacerbation when the gang said, you either become part of us or you'll be targeted as well for retaliation. The issue there is that these particular events can't be taken and chopped up and put into a categorical approach because all of them are linked. All of them have to do with the identification with his family. They all have to do with the identification of him specifically. They all have to do with ongoing events in his particular life that relate to the same issue, which is this danger that was posed by the gang. And so this wasn't simply general criminality. It wasn't something where it was, you know, he was just part of a group. If we took those individual parts that he was part of, that he was a teenager that was recruited and then there was retaliation, again, the case law is out there. But what we're looking at is the totality here of all of the things that happened, including the moving around to avoid the retaliation and then finally abandoning the country and coming up here to the United States. What do you think is our standard of review of that determination that he wasn't being targeted as a member of his family? Well, again, the standard review is going to be looking for error and the error here is that there was substantive evidence. Well, okay, go ahead. Looking for error doesn't answer my question. The question is how do we, what's the standard for determining error? I mean, this is a fact finding, is it not? Correct. And the facts were found favorably in all of these, I'm sorry, the facts here are in opposite to what was presented and that was accepted as credible testimony. Because in order for the judge to find that there was no past persecution, then he had to ignore the credible testimony that was given by the uncle who testified. And that uncle testified about the events, which again, are not mentioned in the findings about the uncle being killed, the cousin being killed. It also ignores the evidence that was present. Are you saying that the uncle was killed because the uncle was a relative of the petitioner's parents? That's the, in fact, the testimony. The testimony is that the gang killed the uncle. So you've got the father, the father's brother, and then a cousin. And that's in my brief, it's cited to the agency record of where those killings occurred. Those weren't random. Those were specific to the family and targeted by the gangs. Counsel, I understand, I think what you're saying about the evidence of sort of an overall cumulative type evidence of past persecution, but I still don't see where you're associating that past persecution with his membership in a distinct social group. And that's where I think you've got a problem. And can you identify that distinct social, socially distinct group, I think is how we phrase it. Right. In this particular case, it's going to be the immutable characteristics of his family ties. What authority is there for that being a distinct, socially distinct group? Again, hopefully I've addressed that adequately in the, I've gone to this analog and I just, I don't have that sight in front of me, Judge. I apologize. But family, my understanding of the case law is that family ties, as long as that family is somehow distinguishable in the community. In this particular case, if we thought about it ourselves, if our family lost our father, that would be significant. Absolutely. Even if a loner mother was hit with nine bullets and survived, that would be significant. The question is why. The question is why they were attacked. And the parents were attacked because they refused to move their business. Correct. Out of a rival gang's territory. And as I understand it, there was evidence that the cousin and uncle were attacked because they refused to join the gang. So the rationale, I mean, we have reasons for those attacks and they have nothing to do with family relationships. All these family, all these members of the family were attacked. In fact, Petitioner was threatened because he wasn't going to join the gang. So there are various members of the family who are subject to threats and attacks, but each is threatened or attacked because that particular person was acting contrary to the aims of the gang. Not because each was related to Petitioner's parents. At least, well, I shouldn't say that categorically. The issue is whether the immigration judge, the IJ, could find that. And there's certainly evidence supporting that finding by the IJ. You have to, your burden, as I understand it, I gave you a chance to say what you thought the burden is. I think your burden is to show that it was no reasonable person could find that the attacks were for a reason other than the relationship to the parents. And that's a tough burden to fulfill on this. Always. Judge, I think the issue here is that when we talk about, I don't want to call the judge irrational, but the judges in these kind of scenarios are acting at the end of the hearing and giving an oral decision. So the fact that it could potentially be contrary to the evidence, I think should be something that is nearly a presumption in immigration court, as opposed to that there isn't an assumption that some of the decision issued upon that same day within minutes was contrary to the evidence. And I think we have to really swallow a pretty big pill to suggest that all of these things that happened to him, particularly to his uncle, to his cousin, to his father, and to his mother, would fall outside the fact that this family was being targeted by the gangs. And so I think that's where, if we categorically take it piece by piece, or we look for other possibilities, we're really missing the picture here. This is really a perfect example of someone who needs the protection of the United States because his family was targeted in El Salvador. Not general criminality, not general issues of danger. We're talking about a family that has shown over and over again that it is targeted by these gangs, and he was even targeted by the police, and that the danger that he would return to El Salvador. Counsel, why was he targeted? What was the evidence in the record about why he was targeted, as you say, by the police? The evidence in the record is they thought he was a gang member because of his age and where he was, those kind of things. That's really not related at all to the other circumstance of the attack on his family. That's correct, Judge. I think I have to agree that those two are somewhat separate. That what happened with the police was not connected to the gangs, but it still shows that because of his situation down there, that he is subject to the potential for violence, extreme violence. If he was returned from the United States now, I think that likelihood would be even greater. I have just a few minutes left, and I'd like to reserve that for follow-up after, if I may. Thank you, Counsel. Mr. Quick? Yes, Your Honors. Eric Quick on behalf of respondents. Now, as our brief argues and articulates, the case can be disposed of even preliminarily, at least with regard to the asylum and the withholding components. One is with regard to the nexus to a protected ground. We need to keep in mind that the agency examines nexus in the context of the second particular social group, children of families targeted by criminal gangs for retaliation. Petitioner's brief discusses this second particular social group, but focuses on cognizability. In other words, that brief conflates the nexus and the cognizability issues. And then by failing to really argue nexus for the reason that the agency argues nexus, abandons that dispositive finding. Similarly, with regard to cognizability and we are dealing again with social distinction. There was reference earlier in the argument to immutability. Immutability was never addressed by the agency. This is social distinction. With regard to only the first particular social group, teenagers recruited by a criminal gang who have rejected membership. And that opening brief cites to no legal authority whatsoever that that particular group is socially distinct within society. Well, this court has already held that, haven't we? This court has. And our brief points to three cases where those, and those are the Riviera Berrientos case. And that was women between 12 and 25 who resist gang recruitment. And then the Rodas case three years later in 2015, Salvadorian males threatened by gangs who resist joining. And this court has repeatedly said that those particularly articulated groups are not socially visible. Riviera Berrientos, for example, says the fact that he was targeted does not provide or those cases illustrate exactly the group articulated in this case. And again, that opening brief, although it mentions social distinction on pages 16 and 17, it doesn't cite to any authority whatsoever from any jurisdiction on why that particular group is socially distinct or why his articulated group is somehow different than from the cases your distinct. So in terms of the group that is socially distinct, which is children of families that have been targeted, you're saying that he hasn't established the, the essentially the nexus, which is that he, he himself was executed. And it's not enough that there that his family was fearful for his life, such that they sent him to live away from the aunt and uncle that he had gone to live with that, that, that kind of concern. He's got, he's got to actually have an instance of, of persecution essentially. Well, with regard, I think you're, you're discussing that second group, the children of families targeted by criminal gangs for retaliation. And that's what the agency discusses on nexus. And they simply say there's no record evidence. And again, to answer your honor's questions, we have to find that a reasonable adjudicator is compelled to find a contrary conclusion to that of the agency. In this case, there's no evidence that the gang recruitment directed at him was somehow related to the attack on his parents several years earlier. And we cite to the Sauciedo Miranda case, an opinion actually written by Judge Hartz, where there were at least five instances of family harm in that case, where the, that particular petitioner had been raped by his father's employer. Later intruders entered a home, beat the family, kidnapped a brother. The following year, another brother is robbed, beaten, and shot. The year following that, a brother-in-law is father is again, robbed and beaten. And this court said that, to quote, he failed to show that his family suffered the tax because they were members of the family, rather than because the perpetrators were simply criminals who sought money and property. What about in this case, when he left home after his father was killed, went to another community and was threatened there. Is there any explanation for the threats against him at that time? Other than that, he was the child of parents who had ordered the gang? Well, to answer your honor's question, there's, I think, two parts of the record where petitioner testifies about his encounter with gang members. One is on page 151. He says the funeral has ended for his father. And he goes to live with his uncle. And he says, they were persecuting me. What do you mean? And petitioner says, there were some gang members. They were like all the time, like they're watching me. And then if I was going through that tienda, what it's like, the little store, they was like watching me, everything I was doing. There's no allegation, there's no testimony from the man that this is somehow related to some family relationship. They're just gang members watching him, presumably for potential recruitment in the future. And when he then goes back to live with his mother, he testifies that the classmate once approached him. That's on pages 152 and the top of 153. One of them approached me one day. We were classmates. One of them approached me and told me, you know, this guy, he's a gang boss. And he says, he wanted to, he wants to recruit you. And I say, why? Well, you know, I will get killed as soon as I get in. And then he tells me, well, we want you in. Again, there's no allegation that this is any sort of family relationship whatsoever. Therefore, what about the episode Mr. Neal talked about, where a neighbor in the town he moved to wanted petitioner to leave because it was endangering the neighbor, the gang? Again, I don't, and perhaps I can be corrected. I'm not aware in the record that that was attributed because of a family connection itself. And even if, and if it was, again, that's not directed to him particularly. We're talking about children and families targeted by criminal gangs. There's no testimony that the neighbor is. But for the, for the other episodes, there's an alternative explanation what might be going on. Was there any alternative explanation of why the neighbor in the town he moved to was concerned about petitioner's presence next door? I don't believe there is. We just don't know. There's certainly nothing from him himself. No, there is not. So because that there's no nexus with regard to the second social group and no social distinction with regard to the first particular social group, then that defeats both the asylum and withholding claims. Those are dispositive of those issues. Do you want to address that? Yes, sir. Yes, Judge. The cat, of course, there's two components. One is the past torture. And although the opening brief of petitioner argues past torture, he doesn't point to any legal authority that what he encountered was torture at all. And really we have that one incident that he talks about, at least he talks about at one time on page 156, where he talks about the police asked him for identification. If you don't have any, so then they don't know who you are. And if they don't know who you are, they don't believe who you are and they start beating you. But as the agency found and discussed, there was no discussion of his injuries, whether he was hospitalized at all. There's no record evidence that those incidents, one or more, were sufficient enough or severe enough to constitute torture on behalf of the government. And we cite two cases, the Tingzhu, which is the Chinese Christian house church case, where he was arrested, detained, fed police. This court found that wasn't even persecution, much less torture. And the Wick-Jacksono case we cited, where Indonesian soldiers had beaten that petitioner, the court found that it was not demonstrative of official behavior and it wasn't torture. Just like this case, there's no past torture here. And with regard to future torture, again, the petitioner to no record evidence, actually, and no legal authority whatsoever that would compel a finding of future torture in this case. And we cite to the Mercedes Bar case, which is actually a decision written by Judge Ai. And that case examined the same human rights report, the 2016 human rights report from El Salvador, in saying that the record did not demonstrate that any reasonable adjudicator would be compelled to find government action. And that was where someone had witnessed a murder and they were worried about gang violence and government corruption and unsuccessful policing efforts. And this court had found that, at least with regard to that particular record in that same human rights report, nothing would compel a finding of government action on any possible future torture claim. And notably, the opening brief doesn't really argue the contrary. Again, there's no record evidence cited, no pages, and no legal authority that would compel future torture. Yes? Let me ask you about a broader issue. What is the status of Mr. Bolaños Barrios now? Where is he? That I don't know, Your Honor. I don't believe he's in government custody or anything. And he's in the United States? I don't know. Well, I'm just curious of why we're hearing this case. My understanding, and this is from press reports, so I don't know how accurate it is, is that people like him are not being removed at this time. And I'm curious why you're taking the time of the courts to pursue removal when the policy of the government is not to remove people who haven't committed a violent crime. Did he commit a violent crime? Is that part of the removal here? At least that's not in the record. So no, that is not part of the removal efforts. Of course, this... My understanding is that people like him are not being removed. So why are you taking the time of the courts to pursue these matters if nothing's going to come of it? I can't say that cases similar to this, they're not being removed. I think Your Honor is referring to the interim DHS and ICE memos of January and February of this year. They articulate three priorities. These are interim memos about priorities, national security, border security, and public safety. This case does not fit within those three interim priorities. This is true. How interim is interim? I don't know. My understanding was this is policy. I believe one of the memos says that maybe it's interim until a regulation can be... No, I believe one of the memos speaks about interim until something... more permanent agency memos dealing with priorities and articulating priorities is issued by the government. We're not talking about regulations. These are something beyond these interim priorities. I mean, the first one was issued on January 20th, the second on February 18th. So they're fairly new with regard to this agency or this administration. Well, it seems to me the administration should adopt some policy with respect to proceedings. We've got plenty to do. There's a huge backlog in immigration cases. So why press these matters in court if you're not going to... if the policy of the government isn't to remove these people anyway? I think it's a little offensive to the courts to say, okay, we're just going to take your time. We want these legal precedents or whatever, but it's not going to make a difference. That's not an appropriate approach to the courts, is it? Well, I can't say that he will or will not be removed. I simply don't know what the agency will do in such a case. Well, it seems to me that there ought to be a policy established by the government because I don't see why we should be spending time on these cases. I've one tomorrow in which the petitioner has already been removed. That's clearly appropriate for us to address. But if someone is not... if the present policy of the government is not to remove somebody, why should the courts be spending time determining whether if you happen to decide to remove him, you'd have the right to? Well, to answer, I think, your Honor's question a bit, that ICE memo of February 18th of this year doesn't say people will not be removed. It articulates priorities of those who will be removed and that others who will be removed will be considered in a different context. Again, this may be an actor. Press reports I'm familiar with say, in effect, no one else is being removed. I mean, there's so many. If you set those priorities, there's just no resources. But I don't want to... Certainly. Let's move this thing further. Mr. Neal has a couple minutes of time. Mr. Neal? Okay. Thank you, Judge. The one issue I just want to address here is about how these events interconnect. And again, I think this is where it was difficult for the immigration judge, basically, going off of his notes to come to the correct conclusion. But I think the court has pointed to some of these facts about the first move was of this child, this 10-year-old, was directly related to the danger that was being presented to this child in the town where the parents had been... The father had been killed and the mother had been shot nine times. He then went to the protection of a different community where he was living with a mayor as relative. And after a year, this is not before the... There wasn't an interceding event where they tried to recruit him. Within a year, the mayor there, with the resources that he has of the government, felt that he was unable to further protect this child. That's the testimony. At that point, the child had nowhere else to go but back into the same community. And as the report, as the evidence, the transcript shows, in many cases, he never left the house. And the one time, not the one time, but one of the few times that he was out and about with school, he ran into someone who basically said, you need to join the gang and that's going to be the way to protect you. And so that was when refusal made it even more exacerbated. But this family was clearly targeted because of their relationship to this gang. And as far as it being, you know, socially visible, it was certainly socially visible enough for the gang to recognize this family as acting in opposite to its goals. And it's also indicative that this was something that the government could not control. Even one of the family members, an uncle, had that authority as mayor. So I think that's where, again, we see a continuing story that has many facts to it that make it specifically related to him and the targeting of his family. Thank you, counsel. Thank you, judge. Case is submitted and counsel are excused.